2026 IL App (1st) 241826-U

SECOND DIVISION
May 12, 2026

No. 1-24-1826

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JULIAN MICKELSON, individually and as Trustee, | ) | Appeal from the |
| | ) | Circuit Court |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| JUDY MICKELSON, individually and as Trustee, | ) | |
| | ) | No. 22CH2630 |
| Defendant-Appellee | ) | |
| | ) | |
| (ROBERT S. HELD, | ) | Honorable |
| | ) | Pamela M. Meyerson, |
| Appellant.) | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court's denial of request that attorney fees be paid out of assets from three trusts affirmed where such payment was not authorized by the parties' settlement agreement.

¶ 2    Appellant, Robert S. Held, represented plaintiff Julian Mickelson in proceedings against Julian's sister, Judy Mickelson, involving three trusts over which Julian and Judy were co-

trustees.[1] After Julian and Judy settled their dispute, the trial court denied Robert's petition for attorney fees which requested that Julian's attorney fees be paid out of the trusts' assets. In this appeal, Robert challenges that decision, arguing that the court's decision was in violation of the parties' settlement agreement. For the following reasons, we affirm.

¶ 3    Because this appeal involves only an issue regarding attorney fees, we will outline the underlying dispute only as much as necessary for the resolution of this appeal. The record shows that Julian and Judy have been involved in a long-running dispute regarding the trusts. This action began on March 24, 2022, when Julian filed a complaint to enforce a prior settlement agreement. The complaint was brought by Julian "individually and as [Co-]Trustee" of the trusts.

¶ 4    On June 12, 2023, the court held a settlement conference, and the parties agreed to settle the case. The court entered a written order on June 14, 2023, outlining certain terms that were to be "incorporated into a formal settlement agreement." In short, those terms provided that the trusts' assets would be distributed to Judy, less $95,000 to be held in escrow conditioned on Judy not violating other terms of the settlement agreement or any court order, including that Judy would "release" and agree not to "disparage or defame" Julian, other third parties, and their business interests. Upon execution of a formal settlement agreement, $60,000 would be distributed to Judy, and the balance would be distributed to her after delivery of the escrowed amount.

¶ 5    The parties executed the final settlement agreement on June 22, 2023. The final settlement agreement provided that the parties agreed to "take such action and conduct themselves strictly in accordance with" the court's June 12, 2023, order, and that the litigation "shall be dismissed with

---

[1] The record shows that the three trusts at issue in these proceedings were at times referred to in plural as "the trusts," or singularly, as "the trust." We will refer to them collectively as "the trusts."

prejudice and without costs *** (subject to any final payments of the Trust[s]) but with the Court continuing to retain jurisdiction to enforce this agreement."

¶ 6    In attempting to implement the terms of the settlement agreement, a dispute arose between the parties and they filed competing motions alleging that the other was failing to comply with the terms. On August 18, 2023, Judy brought a motion for a rule to show cause alleging that Julian failed to distribute the trusts' assets to her pursuant to the settlement agreement. On August 29, 2023, Julian brought a motion to compel against Judy, alleging that she was refusing to sign checks to pay Julian's attorney fees out of the trusts. Julian alleged that Judy was "preventing the trusts' legal fees from being paid," in violation of the provision in the settlement agreement that distributions to Judy were "subject to any final payments of the trust[s]."

¶ 7    In Julian's response to Judy's motion for a rule to show cause, Julian argued that he was not yet required to comply with his obligation to distribute the trusts' assets to her when "Judy herself is not in compliance" because she "failed and refused to make certain payments as required under the Settlement." Julian argued that payment to Judy was "expressly conditioned on her approving the trust expenses," yet she was "refusing to assist in the approval and payment" of "unpaid legal fees incurred by the trustee."

¶ 8    Judy filed a combined response to Julian's motion to compel and reply to Julian's response to her motion for a rule to show cause. Judy argued that Julian was "[h]olding the balance of the trust funds hostage to compel payment of [Julian's attorney] fees," which was "never part of the agreement and settlement." Judy asserted that no provision of the settlement agreement required her to pay Julian's attorney fees from the trusts, and that there was no language in the settlement agreement that indicated she agreed to do so. Judy pointed out that the settlement agreement provided that the litigation would be "dismissed with prejudice and without costs." Judy disagreed

with Julian's contention that the phrase "subject to any final payments of the Trust[s]" suggested that the trusts would pay Julian's attorney fees. Rather, she argued that the phrase "reasonably connotes the mere payment of routine administrative expenses to wind up the affairs of the trust[s]."

¶ 9    Judy also argued that the trusts should not be required to pay Julian's attorney fees because Julian brought the action in his individual capacity as well as in his capacity as co-trustee, and Julian

> "largely pursued objectives that are personal in nature to him, and not directly associated with the administration of the trust[s] [themselves]. These objectives included the pursuit of an agreement not to disparage, and the pursuit of concessions from Judy for the benefit of third parties, which are not parties to this litigation [or] the 2021 settlement agreement."

Judy argued that Julian's efforts to benefit himself and third parties "with which [Julian] has ongoing personal and business relationships" were taken by Julian "in his personal capacity, and [were] not related to the administration of the trust[s]."

¶ 10    On October 2, 2023, the court held a hearing on Julian's motion to compel and Judy's motion for a rule to show cause. No transcript of that hearing appears in the record on appeal. Following the hearing, the court entered a written order denying Julian's motion to compel, finding that the "settlement documents do not require *** Judy *** to pay [Julian]'s attorney fees." Judy's motion for a rule to show cause was continued for further hearing on a later date.

¶ 11    On October 31, 2023, Robert filed a motion to withdraw and a petition for attorney fees. The petition for attorney fees was amended on November 8, 2023. Robert stated that he represented Julian "as co-trustee" of the trusts and that he had outstanding attorney fees of $24,217.85. Robert

stated that the trusts "explicitly provide for the trustees to employ counsel and [to] pay reasonable compensation for such services." Robert also stated that, under Section 1004 of the Illinois Trust Code, the court may award costs and expenses, including reasonable attorney fees, to any party, and that trustees "may reimburse themselves from the trust estate for their attorney fees if those fees were incurred in the management and preservation of the trust estate." Robert stated that in the litigation, he "worked diligently on behalf of Julian Mickelson, co-trustee, and the Trusts to obtain a favorable outcome," including "negotiat[ing] a fair and reasonable settlement that substantially benefitted the trusts."

¶ 12    Robert's former law firm, Harrison LLP, formerly known as Harrison and Held, also filed a motion to withdraw and a petition for attorney fees, seeking $7,690.42 of attorney fees and costs.

¶ 13    The parties apparently engaged in more settlement discussions, and on March 15, 2024, the trial court entered an order noting that the cause was "coming to be heard on the call for status of Settlement, and Petitions for Attorney[ ] fees." The court ordered that the "matter is dismissed on the merits, with the exception of the pending petitions for attorney[ ] fees."

¶ 14    Thereafter, briefing continued on the petitions for attorney fees. In Judy's response, she noted that the engagement agreement indicated that Robert was retained by Julian "individually" and he was not "retained, or otherwise engaged by any of [the] Trusts." Judy argued that Julian was seeking compensation for time that was "not intended to benefit the Trusts" but was "in pursuit of personal benefit to Julian" and other third parties. Judy also asserted that, if the court decided to award attorney fees, the fees sought were not reasonable. Judy pointed out that counsel was seeking compensation of between $600 and $700 per hour. Judy argued that the work provided by Julian's counsel was "ordinary, routine and ministerial," and that the case involved "no unique or

complicated issues." Judy also contended that the requested attorney fees represented more than 10% of the balance of funds that were distributed to Judy pursuant to the settlement.

¶ 15    On April 2, 2024, Julian filed a *pro se* response to his counsel's petitions for attorney fees, commending their "excellent work." Julian asked the court to grant his counsels' fee petitions, and to order that their fees were "payable from the Trusts." Because the trusts' assets had already been distributed to Judy, Julian requested that Judy be required to personally pay the attorney fees from the amounts distributed to her. Julian asserted that he "cannot be personally liable for the attorney fees" because the trusts' documents provided that the trustees were not "personally liable on any obligation of the trust[s]." Julian also noted that Judy had prior counsel whose fee petitions were granted and whose fees were paid by the trusts. Julian stated that those attorneys did not provide "any value to the Trusts," and "if those attorneys were paid by the Trusts, the attorneys actually representing the Trusts who provided value to the Trusts, should also be paid by the Trusts."

¶ 16    On April 23, 2024, the court heard argument on the petitions for attorney fees. No transcript of that hearing appears in the record on appeal.

¶ 17    On May 16, 2024, the trial court entered a written order denying the petitions for attorney fees. The court explained that "resolution of these petitions requires consideration of the history and current posture of the case." The court noted that it had held a settlement conference on June 12, 2023, and that the parties agreed to settle the case. The order following that hearing contained "no mention *** that any attorney[ ] fees would be paid from Trust funds before distribution to Judy." The court also noted that it had held a hearing on Julian's motion to compel, and that it had found that "the settlement documents do not require the Defendant, Judy Mickelson, to pay [Julian]'s attorney[ ] fees."

¶ 18    The court reiterated its prior ruling, explaining:

"Consistent with its prior ruling, the Court now holds that neither the Trusts nor Judy are required to pay the fees of Julian's lawyers, the Petitioners. Petitioners could and should have brought up the issue of attorney[ ] fees when negotiating settlement of this case. No one mentioned paying past attorney[ ] fees in the term sheet incorporated in the June 14, 2023 Order, in the Formal Settlement Agreement, or in the settlement conference that led to that agreement. Petitioners sprung a surprise on Judy by attempting to collect the fees from her under the provision stating that dismissal of the litigation is '(subject to any final payments of the Trust[s]).' *** This generic provision does not give Judy proper notice that the 'final payments' would include a large and unanticipated request for payment of Julian's attorney[ ] fees."

¶ 19 The court also explained that the formal settlement agreement included a clause which stated:

"This Agreement and the attached exhibits and documents therein and herein contain the entire understanding among the signatories with respect to the subject matter hereof and supersedes any prior written or oral understanding among them respecting such matter. No covenants, promises, representation or warranties have been made except as are specifically set forth herein and no provisions hereof may be waived, modified, or altered except in a writing executed by the Parties hereto."

¶ 20 In these circumstances, the court found that Julian's attorneys

"may not rely on the provisions of the Trust agreements or the Trust Code to require the Trusts to pay Julian's attorney fees. Given this holding, the Court need not determine whether the fees are reasonable or whether the Trustee's actions

benefitted the Trust[s]. The parties settled, and neither Judy nor the Trusts [are] responsible for payment of Petitioners' fees."

¶ 21 Finally, the court rejected the argument that Julian's attorney fees should be paid from the trusts because Judy's attorney fees were previously paid from the trusts, noting that "[n]o one objected" to the request to pay Judy's attorney fees from the trusts.

¶ 22 In closing, the court explained that Robert was not "precluded from seeking fees from Julian outside of this litigation" and the court "expresse[d] no opinion on the appropriateness or reasonableness of" the attorney fees sought.

¶ 23 On June 17, 2024, Robert filed a motion to reconsider the court's May 16, 2024, order. Robert argued that the court "erred as a matter of law" by "fail[ing] to give meaning and effect to a critical provision of the Settlement Agreement." Robert contended that the "provision providing that dismissal of the case was subject to 'any final payments of the Trust[s]' " was not "generic," but was "specifically negotiated" before Julian would sign the agreement. Robert claimed:

> "When the parties realized that they could not agree on the attorney[ ] fees but could agree on everything else, they needed to address that issue. It was added to the [formal settlement agreement] *because* the parties could not agree on the attorney[ ] fees and it gave the parties a way to settle while preserving the fee issue." (Emphasis in original).

¶ 24 Robert argued that there were no other "final payments" to be made, and that the only "final payment[ ]" referred to were Julian's legal fees.

¶ 25 In support of his motion to reconsider, Robert also included an affidavit, in which he stated:

> "During the litigation, I discussed attorney[ ] fees with Judy's attorney Tim Biasiello several or more times. Judy was of the view that Julian should pay his

attorneys individually, out of pocket and the trusts should not pay such legal fees. *** In the end, the attorneys could not resolve the amount of attorney[ ] fees to be paid by the trusts."

¶ 26    Robert averred that Julian "wanted to settle with the determination of attorney[ ] fees left to the Court and paid by Judy or the trusts." Robert alleged that the above provision was specifically included because the issue of attorney fees was being discussed, but it had not yet been resolved. Robert asserted that Julian refused to sign an earlier draft which did not include this provision, and that the provision was "added to ensure one set of payments–the legal fees incurred by Julian, as a trustee of the trusts." Robert further averred that Judy signed the final settlement agreement which included the above provision, and that, because the issue involving legal fees was still unresolved, Judy could not have been "surprised that legal fees constituted a final payment of the trusts."

¶ 27    In response, Judy argued that Robert's motion to reconsider should be denied, because he was merely "attempt[ing] to rehash the same argument by mischaracterizing the Court's analysis as a misapplication of the law."

¶ 28    On August 22, 2024, the court entered an order denying Robert's motion to reconsider, "for the reasons stated in open court." No transcript from the hearing appears in the record on appeal.

¶ 29    Robert filed a timely notice of appeal on September 16, 2024. In this court, Robert contends that the court "erred when it interpreted an unambiguous term in a settlement agreement and denied [Robert's] petition for attorney[ ] fees." Robert asserts that the provision stating that the case would be dismissed "subject to any final payments of the Trust[s]" requires his attorney fees to be paid from the trusts' assets, and that the court's contrary reading renders the language "meaningless."

¶ 30    No response brief was filed, and this court took the appeal on the record and Robert's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (a case may be taken on appellant's brief only where the issues are simple and can be decided without additional briefing).

¶ 31    Initially, we note that our review of this appeal is somewhat hindered by deficiencies in the record on appeal. In particular, the trial court held hearings on Robert's petition for attorney fees and his motion for reconsideration, but Robert did not supply this court with a transcript or acceptable substitute from either of those hearings in the appellate record. See Illinois Supreme Court Rule 323 (eff. July 1, 2017). Importantly, the trial court denied Robert's motion to reconsider in a written order, "for the reasons stated in open court." Because we do not have the benefit of a transcript, this court does not know what evidence or argument was before the court at that hearing, nor do we know the specific bases for the trial court's denial of Robert's motion to reconsider. It is Robert's burden, as the appellant, to provide us with a record sufficiently complete to support his claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 394 (1984). Any doubts that arise from the record's incompleteness are resolved against the appellant, and we will presume that the trial court's order was in conformity with the law and had a sufficient factual basis. *Id.*  Nonetheless, the trial court issued an earlier detailed written order upon denial of Robert's petition for attorney fees with the reasons for the denial, and accordingly, we will review Robert's challenge to that decision.

¶ 32    In this appeal, Robert contends that the court erred in interpreting the parties' settlement agreement to conclude that his attorney fees were not payable by the trusts. Resolution of this issue requires us to construe the settlement agreement. "A settlement agreement is considered a contract,

and construction and enforcement of settlement agreements are governed by principles of contract law." *Haisma v. Edgar*, 218 Ill. App. 3d 78, 87 (1991).

¶ 33     Generally, a trial court has broad discretion in its decision whether to award attorney fees and the decision will not be disturbed on appeal absent an abuse of that discretion. *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 170680, ¶ 32. However, in cases where a party challenges a trial court's decision to allow or deny attorney fees under the terms of a contract, our standard of review is twofold. *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 225 (2007). First, to the extent that the trial court interpreted the terms of the contract, our review is *de novo. Work Zone Safety, Inc. v. Crest Hill Land Development, L.L.C.*, 2015 IL App (1st) 140088, ¶ 28; *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 31 ("The interpretation of a contract presents a question of law, which we review *de novo*."). Second, where the trial court applied the terms of the contract to the facts, our review is based on an abuse of discretion standard. *Peleton, Inc.*, 375 Ill. App. 3d at 226.

¶ 34     "In construing a contract, the cardinal rule is to give effect to the intention of the parties, which is discerned from the plain and ordinary meaning of the language used in the contract." *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 700 (2005). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). That language should be given its plain and ordinary meaning, and the contract enforced as written. *Id.*

¶ 35     Our supreme court has long recognized that Illinois follows the "American Rule," which provides that, absent statutory authority or a contractual agreement, each party must bear its own attorney fees and costs. *Morris B. Chapman & Associates, Ltd. v. Kitzman,* 193 Ill. 2d 560, 572

(2000). Although parties to a contract may alter this rule, contractual provisions regarding attorney fees must be strictly construed. *Powers v. Rockford Stop–N–Go, Inc.*, 326 Ill. App. 3d 511, 515 (2001); *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill. App. 3d 234, 254–55 (2010).

¶ 36    Robert contends that the language in the settlement agreement providing that the case would be dismissed "subject to any final payments of the Trust[s]," "plainly supports the payment of attorney[ ] fees." We disagree.

¶ 37    As stated above, we are required to strictly construe a contractual provision for attorney fees. *Bright Horizons Children's Centers, LLC*, 403 Ill. App. 3d at 254–55. "That is, we construe the [contractual] provision 'to mean nothing more—but also nothing less—than the letter of the text.' " *Id*. (quoting *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952 (2004)). In particular, when a party contends that attorney fees are permitted under a statutory or contractual provision, the language of such provision must be precise and unambiguous—"A statute or contract must allow for attorney fees by specific language, such that one cannot recover if the provision does not specifically state that 'attorney fees' are recoverable." *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1039 (2009); *Negro Nest, LLC v. Mid-Northern Management, Inc.*, 362 Ill. App. 3d 640, 649 (2005) ("When faced with cost or expense-shifting provisions in contracts, Illinois courts have consistently refused to read attorney fees into imprecise language."); *Estate of Downs v. Webster*, 307 Ill. App. 3d 65, 70 (1999) ("When the language does not specifically state that 'attorney fees' are recoverable, courts will not give the language an expanded meaning."); *Qazi v. Ismail,* 50 Ill. App. 3d 271, 273 (1977) ("courts have refused to interpret imprecise language as permitting attorney[ ] fees.**\*\*\*** [Allowing an award of attorney fees must be] done by specific language such as listing 'attorney[ ] fees' to overcome the common law rule.

Where they have not used such specific language, the courts have consistently refused to give an expanded reading to the legislative language used.").

¶ 38    For example, in *Qazi*, 50 Ill. App. 3d at 272, this court considered a contractual provision stating: "In case of any legal action arising out of the above default, the party in violation will be responsible for all costs and consequences." The plaintiff argued that his attorney fees should be recoverable because legal action was specifically contemplated by the contract and attorney fees are a natural "consequence" of litigation. *Id.* The court, however, refused to interpret the provision to include attorney fees absent specific language. *Id.* at 273. The court explained that there was "no evidence presented at the trial to indicate what the parties meant by the word 'consequences,' and we will not speculate that the meaning of that term included attorney[ ] fees." *Id.*

¶ 39    In this appeal, Robert claims that his attorney fees were not only contemplated as a "final payment[ ] of the Trust[s]," but those fees were in fact the "only" payment to which that term referred. Although Robert and Julian contended that the language was specifically negotiated to allow for payment of Julian's attorney fees, Judy disagreed. Judy asserted that she never agreed to pay Julian's attorney fees from the trusts, and that the language Robert relies on only contemplated payment of "routine administrative expenses to wind up the affairs of the trust[s]." Indeed, Robert acknowledged in his affidavit that during negotiations of the final settlement agreement, he understood that Judy's position was that Julian was "individually" responsible for his own attorney fees, and that those fees were not payable by the trusts. Given Robert's understanding of her position, it is not plausible for him to have believed that Judy agreed to pay those attorney fees when she signed the settlement agreement providing that the case would be dismissed "subject to any final payments of the Trust[s]." If, as Robert contends, the only final payment contemplated by the provision was Julian's attorney fees, there was no reason for the parties to refer to those

fees by using the "final payments" language, rather than using precise and unambiguous language specifically referring to Julian's "attorney fees." In these circumstances, we conclude that the parties' settlement agreement did not require Judy to pay Julian's attorney fees from the trusts' assets.

¶ 40 We also note that the trial court was familiar with the parties' negotiations, having conducted the settlement conference which resulted in the parties' agreement. The court explained in its order that the topic of attorney fees was not discussed during that settlement conference, and it was not included in the agreed order following that conference. In the trial court's view, Robert "sprung a surprise on Judy by attempting to collect the fees" under the more "generic provision." In the circumstances here, we do not find the trial court's application of the contract terms to the facts to be "arbitrary, fanciful, or unreasonable" or that "no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008); see also *Peleton, Inc.*, 375 Ill. App. 3d at 226 ("to the extent that the trial court applied the terms of the contract to the facts, our review is based on an abuse of discretion standard.").

¶ 41 Having found that the parties' settlement agreement did not provide for the payment of Julian's attorney fees from the trusts, we also conclude, like the trial court, that we need not consider the reasonableness of the requested fees or whether the fees were incurred to benefit the trusts.

¶ 42 For the foregoing reasons, we affirm the judgement of the circuit court of Cook County.

¶ 43 Affirmed.